UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ARGUS MEDIA LTD.,                            :
                                             :
                    Plaintiff,           :       09 Civ. 7966 (HB)
                                             :
                -against-                  :       OPINION & ORDER
                                             :
TRADITION FINANCIAL SERVICES                 :
INC. and TFS ENERGY LLC,                     :
                                             :
                   Defendants.         :
-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

      Plaintiff Argus Media Ltd. ("Argus" or "Plaintiff") filed its Complaint in this action against Tradition Financial Services, Inc. and TFS Energy LLC ("Defendants") on September 16, 2009, alleging two claims of copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Defendants now move to dismiss the Complaint, or in the alternative, to stay this action pending the outcome of two parallel litigations currently pending in arbitration in Houston, Texas and in the High Court of Justice in the United Kingdom. For the reasons set forth below, Defendants' motion to stay this action is granted.

## I.  FACTUAL BACKGROUND

      Argus, a UK company, publishes and sells business intelligence reports, market assessments and special studies relating to the energy, transport and emissions markets. Specifically, with respect to the allegations in this action, Argus develops, publishes and sells energy price indices and writes, publishes and sells news stories and analytical commentary regarding the energy markets. The two publications that Argus produces that are the subject of the instant Complaint are the *Argus Coal Daily International* newsletter ("*Coal Daily*") and the *Argus Air Daily* newsletter ("*Air Daily*").

      By agreement dated November 8, 2001, a predecessor-in-interest to Argus entered into a license to send by electronic mail a single copy of *Coal Daily* to Daniel James, an employee of Tradition Financial Services Limited ("Tradition UK"), an affiliate of Defendants located in the United Kingdom. Pursuant to the *Coal Daily* License, one copy of each issue was emailed as a PDF attachment to Mr. James between November 2001 and expiration of the License on February 18, 2009. The *Coal Daily* License provided that "[t]his Agreement is regulated by English law and the parties agree to the non-exclusive jurisdiction of the English Courts." In its instant

1

Complaint, Argus alleges that Mr. James routinely made and distributed unauthorized copies of *Coal Daily* to Defendants' employees in the United States, who in turn made and distributed unauthorized copies to other employees and to third parties. On June 26, 2009 Argus brought suit against Tradition UK in the High Court of Justice in the United Kingdom alleging infringement of the *Coal Daily* copyright under UK law (the "UK Action").

Separately, by agreement dated September 11, 2006, Argus Media US (an affiliate of Argus) agreed to send by electronic mail a single copy of *Air Daily* to Eric Klein, and employee of Defendant TFS. Pursuant to the *Air Daily* License, one copy of each *Air Daily* was emailed as a PDF attachment to Mr. Klein from September 2006 until TFS terminated the License in September 2008. Although not explicitly stated in the Complaint, it appears that Argus Media US continued to send daily copies of *Air Daily* to Mr. Klein even after the License had been terminated. Argus alleges that Mr. Klein made and distributed unauthorized copies of *Air Daily* to other employees and to third parties in the United States. The *Air Daily* License contained a binding arbitration clause as follows: "[A]ll claims arising under this Agreement shall be brought before a single arbitrator with expertise concerning copyright matters pursuant to the Commercial Arbitration Rules of the American Arbitration Association." After they had received cease and desist letters from Argus, Defendants filed a demand for arbitration in Houston, Texas for a declaratory judgment that it had never infringed any of Argus's copyrights (the "Texas Arbitration"). In its answer, Argus counterclaimed with identical allegations and prayers for relief that it asserts in this action under the same *Air Daily* License. The only difference between the claims pending before this Court and those pending before the arbitrator is the timeframe covered by each claim: in this case, Argus alleges violations of the *Air Daily* copyright from November 2007 to April 2009 – a period that covers both pre- and post-termination of the License – while in the arbitration it seeks relief on infringement claims from September 2006 to September 2008, the exact term of the License.

## II. DISCUSSION

**A.**     **The *Air Daily* Claim**

   *1. Prior Action Pending*

Defendants argue that the *Air Daily* claim (Count Two of the Complaint) should be dismissed, or in the alternative, stayed because of the pending Texas Arbitration. Defendants' argument is based primarily on the "prior action pending" doctrine; that is, Defendants argue that

the *Air Daily* claim should be dismissed to avoid duplicative litigation under the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). However, as the Supreme Court itself recognized in *Colorado River*, abstention by a federal court with jurisdiction to adjudicate a claim before it "is an extraordinary and narrow exception" and is justified only in "exceptional circumstances." *Id.* Moreover, the precise issue before the *Colorado River* Court involved concurrent jurisdiction of a federal court over a claim that was contemporaneously pending in the state court system. A related principle has been applied when a federal court permits a parallel litigation to proceed in another federal jurisdiction. *See, e.g.*, *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000); *Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991). However, Defendants have cited no cases – and this Court has not located any – where the "rare" and "exceptional" principles of the prior action pending doctrine have been used by a federal court to stay its hand in favor of a parallel arbitration. The doctrine appears to be inapplicable in this case, therefore, and the Court finds that dismissal of the *Air Daily* claim in favor of the Texas Arbitration is inappropriate under the prior action pending doctrine.

### 2. Stay Pending Arbitration

Alternatively, Defendants contend that the Court should stay the *Air Daily* claim under the Federal Arbitration Act ("FAA") or pursuant to its inherent authority. If the claim is arbitrable, the FAA requires the Court to stay the action pending the outcome of the arbitration.[1] To determine whether a claim is arbitrable, four questions must be considered: (1) Did the parties agree to arbitrate? (2) If so, what is the scope of that agreement? (3) If federal statutory claims are asserted, did Congress intend those claims to be non-arbitrable? (4) If some, but not all, of the claims are arbitrable, should the balance of the proceeding be stayed pending arbitration? *See, e.g.*, *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987).

In general, "the issue of whether the parties agreed to arbitrate a matter is to be decided by the courts and not the arbitrators, unless the parties clearly and unmistakably provide otherwise." *Alliance Bernstein Inv. Res. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)). The Second Circuit has expressly held that "when . . . parties explicitly incorporate rules that empower an

---

[1] Section 3 of the FAA gives courts the power to stay an action upon being satisfied that the issue before the court is referable to arbitration. *See* 9 U.S.C. § 3. However, the power to dismiss and compel arbitration is limited in terms of venue, and a court may only compel arbitration within the judicial district in which the petition to compel has been filed. *Id.* § 4. Thus, where arbitration is to proceed in another district, as in this case, only a stay is available. *See Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318 (E.D.N.Y. 2001) (citing *Ryan v. Allen*, 992 F. Supp. 152, 154-55 (N.D.N.Y. 1998)).

3

arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec v. Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). In *Contec*, the arbitration clause in question provided that "the controversy shall be determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id.* Rule 7 of the AAA Commercial Rules, in turn, provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a). The Second Circuit found that incorporation of this Rule into the contract by reference was a clear manifestation of the parties' intent to submit all questions of arbitrability and jurisdiction to the arbitrator. *Id.*[2]

The arbitration clause contained in the *Air Daily* License is indistinguishable from the provision at issue in *Contec*: it provides that "all claims arising under this Agreement shall be brought before a single arbitrator . . . pursuant to the Commercial Arbitration Rules of the American Arbitration Association." As in *Contec*, the parties' incorporation of the AAA Commercial Rules has manifested their intent to reserve to the arbitrator all questions of arbitrability. *See Contec*, 398 F.3d at 208; *see also Shaw Group, inc. v. Triplefine Int'l Corp.*, 322 F.2d 115, 123 (2d Cir. 2003) (applying New York law). Contrary to Plaintiffs' machinations, the fact that certain of their claims before this Court arose after the *Air Daily* License had terminated does not alter this result. That is, having been granted the authority to determine "the existence, scope or validity of the arbitration agreement," the arbitrator likewise has the sole authority to determine whether claims that arose post-expiration of the arbitration clause are within the scope of the clause. *See, e.g.*, *Maisel v. McDougal Little*, 06 Civ. 0765 (LMM), 2006 U.S. Dist. LEXIS 32501, at *5-8 & n.4 (S.D.N.Y. May 22, 2006). Thus, although both parties have devoted many pages to the merits of whether the *Air Daily* claim is arbitrable – and in particular, whether post-termination claims are arbitrable – this Court cannot usurp the authority the parties have granted to the arbitrator to determine that question. Accordingly, the *Air Daily* claim must be stayed at least until the arbitrator has determined whether the claim is arbitrable. Pursuant to the FAA, if the arbitrator answers this question in the affirmative, and proceeds to adjudicate the entirety of the *Air Daily* infringement claims, then the *Air Daily* claims currently before the Court must be stayed pending the outcome of the arbitration.

---

[2] The language of Rule 7 of the Commercial Rules of the AAA remains the same today as the version that was in place at the time *Contec* was decided in 2005. *Compare Contec*, 398 F.3d at 208 *with* AAA Rule R-7(a).

The question then arises as to what, if anything, this Court should do in the event the arbitrator decides, as Plaintiffs press the Court to do here, that post-termination claims are not arbitrable. Should the Court then proceed to adjudicate those claims while essentially identical claims for a different time period proceed in the Texas Arbitration? In such situations – that is, where certain claims are not subject to an arbitration clause while other, related claims are subject to arbitration – courts retain substantial discretion to stay the remainder of the proceedings pending arbitration as a means to promote judicial efficiency and to control their dockets. *See, e.g.*, *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997); *Genesco*, 815 F.2d at 856; *Provident Bank*, 141 F. Supp. at 318. Thus, numerous courts have held that where arbitrable and non-arbitrable claims arise out of the same set of facts, a stay usually is appropriate in the interest of judicial efficiency, because the arbitration may decide the same facts at issue in the litigation. *E.g.*, *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991); *Aekyung Co. Ltd. v. Intra & Co., Inc.*, 99 CIV. 11773 (LMM), 2000 WL 1522302, at *2 (S.D.N.Y. Oct. 13, 2000). A party that moves for a stay pending arbitration in such circumstances must first establish that "there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." *Orange Chicken, L.L.C. v. Nambé Mills, Inc.*, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *8 (S.D.N.Y. Dec. 19, 2000).

In opposition to a stay, Plaintiff argues primarily that the *Air Daily* claim that is to be litigated in the Texas Arbitration does not "predominate" here because the two claims involve different time periods. Yet, Plaintiff overlooks the fact that it is the exact same type of conduct that is the subject of both this action and the Texas Arbitration, to wit, the redistribution of *Air Daily* by Mr. Klein and the continued redistribution by those recipients to other employees and third-parties. That is, the question of Argus's rights and Defendants' authority to engage in such conduct will be finally resolved in the arbitration, regardless of the time period to which the claim relates. Indeed, the time periods at issue are not quite as dissimilar as Plaintiffs contends – the *Air Daily* claim before this Court covers approximately eighteen months, ten months of which are at issue in Plaintiff's counterclaim in the Texas Arbitration. Moreover, Defendants' claim in the arbitration is for a declaratory judgment that they have *never* infringed Plaintiff's copyright in the *Air Daily* publication; this claim, by its very nature, overlaps entirely with the *Air Daily* claim before this Court. Moreover, it is clear that Defendants will not act to hinder the arbitration, as they were the parties to demand arbitration in the first instance, and while Defendants have not represented to the Court exactly how long the arbitration is expected to last, they maintain that it is

5

proceeding at a normal pace and a hearing before the arbitrator is expected during the summer of 2010. Argus, for its part, has demonstrated no undue hardship or prejudice that might befall it by proceeding with its claims before the arbitrator.

For these reasons, Plaintiff's *Air Daily* claim will be stayed pending the outcome of the Texas Arbitration, irrespective of whether the arbitrator determines that the post-termination claims are arbitrable under the License Agreement.

**B.     The *Coal Daily* Claim**

Separately, Defendants argue that the *Coal Daily* claim should be dismissed under the doctrine of forum non conveniens or, in the alternative, under the prior action pending doctrine.[3] Defendants contend that, although the UK Action and the instant action have been brought against different Tradition entities, the crux of the dispute is the alleged copyright infringement by an employee of Tradition UK. Not surprisingly, Plaintiffs paint the nature of this action differently, arguing that while the UK Action involves alleged infringement of a UK copyright by a UK company in the UK, the instant action involves alleged infringement of a United States copyright by a United States company in the United States.

   *1. Forum Non Conveniens*

The Second Circuit has established a three-step framework to resolve motions brought under the doctrine of forum non conveniens: (1) the court must first determine the degree of deference to be given to the plaintiff's choice of forum; (2) the court must determine whether an adequate alternative forum exists; and (3) the court balances the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London*, No. 08 Civ. 2225 (JGK), 2009 WL 667272, at *2 (S.D.N.Y. Mar. 16, 2009) (quoting *Gulf Oil*, 330 U.S. at

---

[3] Defendants also appear to argue that the choice-of-law and forum selection clause dictates that the suit is destined to go forward in England. There are several problems with this argument. First, Defendants are not parties to the *Coal Daily* License. This, however, is not dispositive. *See, e.g.*, *Universal Grading Serv. v. eBay, Inc.*, 08-CV-3557 (CPS), 2009 U.S. Dist. LEXIS 49841, at *54-55 (E.D.N.Y. June 10, 2009); *see also Aguas Lenders Recovery Group LLC v. Suez, S.A.*, No. 08-1589-cv, 2009 U.S. App. LEXIS 23331, at *12 (2d Cir. Oct. 23, 2009) ("We find ample support for the conclusion that the party is a non-signatory to an agreement is insufficient, standing alone, to preclude the enforcement of a forum selection clause."). The larger problem is that the forum selection clause provides only that the parties submit to the *non-exclusive* jurisdiction of the UK courts; as such, the clause is not mandatory and need not be enforced. *See, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). As for the choice-of-law provision, while the fact that the parties agreed to apply English law to the interpretation of the License may weigh in favor of dismissal to some degree, it does not dictate that result.

508). However, the degree of deference due to a plaintiff's choice of forum is determined on a sliding scale, and varies depending on the circumstances of each individual case. *See Iragorri*, 274 F.3d at 71-72. For example, less deference is owed to foreign citizens that sue in the United States. *See id.* at 71. Argus argues that its choice of forum should be given a great deal of deference because it has sued in Defendants' home forum. However, as the Second Circuit has found, the decision of a foreign company to sue where the Defendants are located and amenable to jurisdiction is not a reason necessarily to give more deference to its choice of forum where there is no other connection to the forum. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003).

An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute. *Id.* at 75 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Argus argues that the UK is not an adequate alternative forum for two reasons: first, Defendants have not shown that they are amenable to service of process in the UK, and second, its copyright infringement claims under the Copyright Act cannot be adjudicated in UK courts. I agree on both scores. First, neither of the Defendants has made any representations – either in their briefs or at oral argument – that they will submit to jurisdiction in the UK; rather, they aver only that *Tradition UK* is amenable to process there. Absent any such consent, the UK would not be an adequate forum for the Defendants in this action and dismissal should be denied on that basis alone. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005). Moreover, by letter dated December 16, 2009, Plaintiffs brought to this Court's attention the recent decision of the Court of Appeal (Civil Division) of the High Court of Justice in the United Kingdom, in which the court held that "English law regards claims for infringement of foreign, non-EU (or Lugano) copyrights [such as U.S. copyrights] as non-justiciable." *Lucasfilm Limited v. Ainsworth*, [2009] EWCA Civ. 1328 at ¶ 174. In so holding, the court expressed its view that "[i]nfringement of an IP right (especially copyright, which is largely unharmonised) is essentially a local matter involving local policies and local public interest. It is a matter for local judges." *Id.* at ¶ 175. Although Defendants attempt to distinguish the *Lucasfilm* case by once again casting this case as one involving solely UK facts and UK law, the Court cannot overlook the Plaintiff's having framed this case as one that also involves United States conduct and U.S. copyright law. Regardless of the wisdom of the English court's determination, it seems clear that Argus cannot litigate its Copyright Act claims in England. Accordingly, England is not an adequate alternative forum in this circumstance.

Finally, even if England were an adequate forum for Argus's claims, the Court cannot find that either the private interest factors or the public interest factors weigh in favor of a forum non conveniens dismissal in this case. The private factors to be considered are: (1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process to obtain attendance of unwilling witnesses; and (4) other practical problems that make trial easy, expeditious and inexpensive. *See, e.g.*, *Gulf Oil*, 330 U.S. at 508. As noted, each party paints this case as having its locus of operative facts in a different forum. Under the circumstances, it does not appear that the private interest factors cut strongly in favor of either forum. The public interest factors to be considered are: (1) court congestion; (2) avoidance of difficult problems in conflict of laws and the application of foreign law; (3) unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home. Numerous courts have found that the public interest factors often favor dismissal where there is a parallel litigation arising out of the same or similar facts already pending in the foreign jurisdiction. *See, e.g.*, *Transunion Corp. v. PepsiCo, Inc.*, 811 F.3d 127, 129 (2d Cir. 1987); *Otor, S.A. v. Credit Lyonnais, S.A.*, 04 CV 6978 (RO), 2006 U.S. Dist. LEXIS 64885, at *20 & n.16 (S.D.N.Y. Sept. 11, 2006) (collecting cases). Here, although there can be no doubt that the Southern District of New York has a crowded docket, this fact need not weigh heavily in the analysis. *See ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 428 (S.D.N.Y. 1998). Further, while the infringement of the *Coal Daily* newsletter might have begun in the UK by Mr. James, Argus alleges that it continued when Mr. James forwarded the publication to employees in the United States who in turn redistributed unauthorized copies in New York and beyond. Thus, this is not a case that, based on the allegations of the Complaint, has absolutely no relation to the forum. Finally, Argus's claim arises under United States copyright law and does not involve complex issues of foreign law. On balance, therefore, the public interest factors do not tilt strongly in favor of dismissal under forum non conveniens.

### 2. *Prior Action Pending*

Notwithstanding the impropriety of dismissal for forum non conveniens, the Court nonetheless acknowledges that "[c]ourts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 103 (S.D.N.Y. 1997) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 996, 1003 (S.D.N.Y. 1996)). Factors to be considered as to whether it is appropriate to stay or dismiss include: (1) the similarity of parties and issues involved, (2) promotion of judicial

efficiency, (3) adequacy of relief available in the alternative forum, (4) considerations of fairness to all parties or prejudice to any party; and (5) the temporal filing of each action. *Id.* (quoting *Caspian Inv., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991)). Although in general I am reticent to stay an action for any significant amount of time, it appears that there are sufficient similarities between this action and the UK Action that counsel a stay. At their core, both actions involve Defendants' (and/or their affiliates') right to copy and distribute Argus's copyrighted work. At the very least, to allow the UK Action to proceed without parallel litigation in this Court would be instructive on the ultimate resolution of the *Coal Daily* claim here. Accordingly, in its discretion and in the interest of judicial economy, the Court will grant a stay of the *Coal Daily* claim pending the resolution of the UK Action, so long as it is completed within a reasonable period of time. As detailed below, the parties are directed to advise the Court of the status of the proceedings of the foreign litigation; if the UK Action is not resolved within the time permitted, the stay will be lifted and this Court will proceed to adjudicate the *Coal Daily* claim before it.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to stay this action is GRANTED. The parties are instructed to advise this Court by letter within ten (10) days from the date of any of the following events: (a) a resolution by the Texas arbitrator as to whether the post-termination *Air Daily* claims are arbitrable; (b) final disposition of the Texas Arbitration; and (c) final disposition of the UK Action. In the meantime, this action will be placed on the Court's suspense docket. In all events, if either the Texas Arbitration or the UK Action is not finally resolved within twelve (12) months of the date hereof, this stay shall be lifted and this Court will proceed to adjudicate the merits of both claims. The Clerk of this Court is instructed to close this motion (Docket No. 10) and to place this matter on suspense for a period of twelve (12) months.

IT IS SO ORDERED.
New York, New York
December 24, 2009

_____
U.S.D.J.